**Herb HEATHCOATE, d/b/a Wyandotte Cafe, Appellant,**

v.

**Louis Henry BISIG, Appellee.**

Court of Appeals of Kentucky.

Dec. 3, 1971.

W. S. Heidenberg, Raymond F. Bossmeyer, Heidenberg & Bossmeyer, Louisville, for appellant.

Stanley A. Stratford, Campbell & Stratford, Louisville, for appellee.

PALMORE, Judge.

Herb Heathcoate, d/b/a Wyandotte Cafe, appeals from a judgment entered pursuant to a jury verdict awarding Louis Henry Bisig $6,869.56 for personal injuries inflicted on Bisig at Heathcoate's place of business. His principal contention is that he was entitled to a directed verdict.

The Wyandotte Cafe is a bar in Louisville. The events out of which this litigation arose took place around or shortly after midnight on a Saturday night in July of 1967. Bisig had been to the trotting races and went to the Wyandotte just before midnight. Several other people were there, some standing at the bar and others sitting at tables. Two men were playing pool at a table in the rear. They were playing for money, and after the third game one of them, named Dickinson, quit and sat down at a table with his lady friend, Juanita Childress. According to Dickinson, there were three young men together, whom he did not know, and he played games with two of them. When he declined to play any more the third young man became incensed and knocked him out of his chair. At some interval of time thereafter, the length of which was the subject of sharply conflicting testimony, one of the other young men came up to Bisig at the bar and asked him if he would play a game for $10. When Bisig declined, the young man knocked him to the floor and was joined by the other two in administering a further beating to Bisig while he was on the floor. Bisig was severely injured. His assailants left the bar and were not identified.

We cannot tell from the evidence how large a place the Wyandotte Cafe was, how many customers it would accommodate, or how many customers actually were there. However, it was in the sole charge of one bartender, who had no assistance after 10:00 P.M. A fellow-employe, Bud Abei, Bisig's brother-in-law, was present but had gone off duty at 10:00 P.M. and evidently had stayed on as a customer.

■ It is agreed that the proprietor of an inn or tavern is not an insurer of the safety of its patrons, but must exercise ordinary care to protect them from injury. The law that applies to this case was succinctly stated in Sidebottom v. Aubrey, 267 Ky. 45, 101 S.W.2d 212, 213 (1939), as follows:

"What constitutes ordinary care varies with the nature of the business and the use to which the premises are put, but it is a care commensurate with the particular circumstances involved in the given case. * * * Since the defendant was not an insurer of the safety of the plaintiff, it was necessary to show either that he knew one of his patrons was about to injure the plaintiff and he failed to exercise ordinary care to prevent such injury, or that the conduct of some of the persons present was such as would lead a reasonably prudent person to believe that they might injure other guests."

■ The men playing pool were drinking beer and were betting on the games. The bartender, Thompson, testified that some time prior to the assault on Dickinson he had stopped the three young men from gambling and was unaware that they had resumed it, though Bisig and others at the bar saw them gambling with Dickinson. Be that as it may, there was nothing to put Thompson or anyone else on notice of their pugilistic propensities until one of them attacked Dickinson. The dispositive question in the case is what could and should have been done thereafter.

Thompson testified that immediately following the Dickinson incident he went back and ordered the participants to leave, and that they "started" out the side door but the

next thing he knew was that "one of those guys" was into it with Bisig. Thompson then went to the telephone to call the police, but before he could get an answer the offending parties left. The inference from Thompson's testimony, supported by positive evidence to that effect by other witnesses, is that the attack on Bisig occurred almost immediately after he had ordered the young men to leave, but there was other evidence from which the jury could reasonably have believed that the interval was much longer, and that Thompson did nothing during that time to get rid of the troublemakers. Bisig, for example, testified that it was about ten minutes, but that he was not apprehensive because, as he said, "I thought it was all over. I thought they were leaving. That was on my mind * * they were in the back of the place and they started walking up towards the front, which I thought they were going to leave, but evidently I was wrong." Another patron, Burden, also estimated that about ten minutes elapsed between the two assaults. Both Bisig and Burden said that during this interim Thomspon did not take any steps to put the young men out and did not attempt to call the police.

Thompson was about 65 years of age and worked at the bar two nights a week. His first action following the attack on Dickinson was to help the stricken man, who had suffered a nasty cut on the head. Obviously Thompson's hands were full for a time at least. Nevertheless, if there was enough time for him to see that the initiators of the disturbance departed or to telephone the police upon their failure to do so, it would not be unreasonable for a jury to find that he should have done so. We think the evidence was sufficient to support such a finding, and certainly there was credible evidence to the effect that Thompson attempted neither to get rid of the offenders nor to call the police before Bisig was assaulted.

The argument is made that since Bisig and his witnesses did not anticipate any further violence after the Dickinson episode there is no basis for expecting a greater degree of prescience on the part of the bartender. The answer is that what Bisig or any other patron actually did anticipate is not the criterion of what a reasonably prudent person in charge of the place should have anticipated. As a matter of fact, it might be argued that Bisig and the other customers were all negligent in not fleeing the premises at the first sign of battle, but that issue was not raised and is not before us.

Another issue that was not raised is whether the proprietor of the cafe had adequate help on hand in view of the nature and size of his business and the time and place involved. It may be that a man of Thompson's age could not have been expected to undertake the duties of a bouncer. At least, however, he could have reached for the telephone at once, and if he had done so it seems probable that the offenders would not have tarried long enough to engage in another fight.

A further complaint is made to the effect that the jury was unduly prejudiced by references to the fact that Dickinson and the three young men were gambling on the pool games. We are not asked, however, to consider reversing on the ground of any prejudicial rulings made by the trial court in the reception of this information. Surely it was relevant evidence of the circumstances leading to the attack on Bisig regardless of whether it had any importance as a signal of impending trouble. We find nothing in the record to suggest any abuse in this respect.

The judgment is affirmed.

All concur.